UNITED STATES DISTRICT COURT **Eastern District of Kentucky**
EASTERN DISTRICT OF KENTUCKY         **F I L E D**
LONDON                               MAY 0 6 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-279-GWU


LENDY PREWITT,                                          PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,              DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to
    Step 4. If no, the claimant is not disabled. See 20 CFR
    404.1520(c), 404.1521, 416.920(c), 461.921.

1

Prewitt

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion. . ." <u>Wright v.</u>
<u>Massanari</u>, 321 F.3d 611, 614 (6th Cir. 2003) <u>(quoting</u> <u>Kirk v. Secretary of Health</u>
<u>and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record
as a whole and must take into account whatever in the record fairly detracts from
its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact
that the Commissioner has improperly failed to accord greater weight to a treating
physician than to a doctor to whom the plaintiff was sent for the purpose of
gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654,
656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion
is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and</u>
<u>Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968,
973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on
the trier of fact only if they are not contradicted by substantial evidence to the
contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long
been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner
may assess allegations of pain. Consideration should be given to all the plaintiff's
symptoms including pain, and the extent to which signs and findings confirm these
symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's
allegations of disabling pain:

3

Prewitt

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

Prewitt

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most

of the time with some pushing and pulling of arm or leg controls; by definition, a

person capable of this level of activity must have the ability to do substantially all

these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the

capacity to lift no more than ten pounds at a time and occasionally lift or carry small

articles and an occasional amount of walking and standing. 20 CFR 404.1567(a),

416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental contaminants

. . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the

Commissioner may still use the rules as a framework for decision-making, 20 CFR

Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record

reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

6

Prewitt

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Lendy Prewitt, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of hypertension, degenerative joint disease, chronic obstructive pulmonary disease secondary to a long history of cigarette smoking, and atherosclerotic cardiovascular disease. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Prewitt retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 42 years, high school education, and past semiskilled/unskilled work experience, could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 278). He: (1) had a "mildly limited" ability to lift, stand, crouch, push, or pull; (2) required work that would accommodate a decreased range of motion in the right upper extremity in terms of tolerance for flexibility and repetitive activity; (3) would be limited to work that involved only simple, non-detailed tasks, where public and co-worker contact was casual and infrequent, where supervision was direct and non-confrontational, and

7

where changes in the workplace were infrequent and gradually introduced. (Tr. 278-9). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 279).[1]

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff contends on appeal that the ALJ did not properly evaluate opinion evidence from a treating source. Given the factors of this particular case, the Court agrees.

Mr. Prewitt initially alleged disability due to a back injury and other musculoskeletal problems such as a history of broken ribs, and the residuals of a facial reconstruction after an accident in which he was hit in the face with a tree branch. (Tr. 59, 270, 273). Medical records from 1999 to 2001 (e.g., Tr. 111, 116, 125-7,139, 145-50, 154-8) support the plaintiff's allegations of problems in these areas, but they do not establish any functional restrictions beyond those given by state agency reviewers in 2002, who opined, after a review of the evidence, that Mr. Prewitt could perform medium level work with occasional stooping, crouching, and crawling. (Tr. 161-76).

---

[1]  The "region" was not defined.

In August, 2003, however, the plaintiff was found to have unstable angina clinically, and, after a cardiac catheterization by Dr. Anis Chaloub showed "80% stenosis X 3" (Tr. 213), Mr. Prewitt was referred to Dr. Michael Jones for the placement of stents. (Tr. 248-50). The procedure was carried out on August 20, 2003.

The plaintiff's treating family physician at this point was apparently Dr. Bernard Moses, although office notes submitted on his office stationery bear an illegible signature. (Tr. 239-43). The signature is similar to that of Carol McFarland, a registered nurse practitioner in the office of Dr. Moses, who signed a letter dated August 28, 2003, stating that in her opinion Mr. Prewitt was "totally disabled due to his degenerative disc disease . . . and coronary artery disease." (Tr. 210).

More significant than this vocational conclusion was a residual functional capacity assessment form bearing the date October 6, 2003, limiting the plaintiff to less than sedentary level lifting due to severe coronary artery disease "status post PCTA/stent." (Tr. 244). The assessment also states that, while his standing, walking, and sitting were not affected, Mr. Prewitt should never climb, should only occasionally balance, crouch, kneel, and crawl, and had limitations on pushing, pulling, working at heights, around moving machinery, and at extremes of temperature, and around chemicals, dust, fumes, humidity, and vibration. (Tr. 244-7). In his decision, the ALJ noted that the signature on the medical assessment form was illegible, but to the undersigned it clearly is that of the treating cardiologist, Anis

9

Chalhoub. (Compare Tr. 214 with Tr. 247). The ALJ continued, stating that an opinion from a treating physician was not binding on the Commissioner in the absence of supporting diagnostic studies and treatment notes and that, in his opinion, the evidence from the office of Dr. Moses (the other treating source) did not support "these unreasonably restrictive opinions" (Tr. 17).

The ALJ's residual functional capacity finding was more consistent with a subsequent consultative examination conducted by Dr. Stephen Lamb. (Tr. 256-61). Dr. Lamb indicated in a form attached to his November 22, 2003 examination that he reviewed exhibits 11F, 12F, and 14F, (Tr. 261), which were, respectively, cardiac catheterization records, office notes from Dr. Moses, and treatment notes describing the cardiac catheterization.[2] However, in reviewing Dr. Lamb's actual report, it is not clear if he had access to these records before completing his report, in which he appears to take the plaintiff's medical history orally (e.g., statements that "the patient says . . ."). (Tr. 256). Although Dr. Lamb found an elevated blood pressure on examination, he noted no evidence of congestive heart failure and actually concluded that Mr. Prewitt had no physical evidence for restrictions. (Tr. 258-9). Dr. Lamb then added that "further information from exercise testing or earlier cardiac imaging would be helpful." (Tr. 259).

---

[2]Exhibit 13F was the treating source functional capacity assessment.

10

Prewitt

As a result, the ALJ had one set of restrictions from a treating specialist source, and another set of restrictions from a one-time consultative examiner whose access to the medical evidence was limited, who did not deal with the evidence that was available to him fully, and who was not given access to functional restrictions reported by the treating source. Under the circumstances, the Court agrees with counsel for the plaintiff, who argues in her brief that the ALJ's rejection of the treating source opinion was, therefore, based only on his own analysis of the medical evidence, not on the fully informed opinion of any qualified medical reviewer or examiner.[3]

The decision will be remanded for further consideration.

This the _____6_____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

---

[3]Moreover, even if the October, 2003 assessment signature had been more similar to that of Dr. Moses or Carol McFarland, the Court notes that the Commissioner's regulations at 20 C.F.R. section 404.1512(c)(1) provide that the Commissioner "will seek additional evidence or clarification from your medical source when [his] report . . . contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." The ambiguity about the signature on the treating source's residual functional capacity form would seem to be just the sort of circumstance that this regulation was designed to prevent, particularly in view of the fact that the plaintiff was being represented at the administrative level by a non-attorney representative, and an ALJ may have a heightened duty to develop the record in such cases. Lambdin v. Commissioner of Social Security, 62 Fed.Appx. 623 (6th Cir. 2003) (unpublished).

11